IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.   11-cv-00358-WYD-KLM

MOHANEE JONES,

    Plaintiff,

v.

DAVID'S BRIDAL, INC.,

    Defendant.

---

**ORDER**

---

I.    <u>INTRODUCTION</u>

THIS MATTER is before the Court on Defendant's Motion for Summary Judgment (ECF No. 15), filed December 8, 2011.  Defendant seeks summary judgment on Plaintiff's claims against the Defendant alleging race and national origin discrimination under Title VII.  On December 23, 2011, Plaintiff filed her response to the Defendant's motion indicating that she "concedes that she cannot prove that she was terminated in October, 2009, for a discriminatory reason."  (Resp. at 6, ECF No. 16). Accordingly, I grant summary judgment as to Plaintiff's claim that she was discharged in 2009 due to discrimination or retaliation.  For the reasons stated below, Defendant's motion for summary judgment with respect to Plaintiff's claim that her hours were reduced based on race or national origin discrimination under Title VII of the Civil Rights Act is granted.  I also grant Defendant's motion for summary judgment on Plaintiff's claim of retaliation based on failure to rehire for the reasons set forth below.

II.     RELEVANT FACTUAL BACKGROUND

Plaintiff alleges that she was discriminated against because of her race and national origin: (1) when Plaintiff's supervisor, Ina Galushko, reduced her employment hours in 2009 and (2) when Plaintiff was not asked to return to work in 2010.

Plaintiff's Allegations Regarding Her Work Schedule

On January 26, 2006, Plaintiff was hired as a part-time alterations specialist (seamstress) at David's Bridal store 82 in Littleton, Colorado. Plaintiff asserts that her race is Indian (South Asian) and her national origin is that she is from Guyana, South America. The David's Bridal 82 store alterations department's busiest time of the year is from approximately March through October or November. Typically, Plaintiff would be laid off each year following the busy season and then rehired in the spring. In November 2006, Plaintiff was laid off, but in March 2007, Plaintiff returned to work. In November 2008, Plaintiff was again laid off. In March 2009, Ina Galushko, the alternations manager, rehired Plaintiff.

On October 1, 2009, due to the poor economy, David's Bridal issued a memorandum to all stores requiring that any store that fails to meet the payroll plan prior to November 1, 2009 or after December 31, 2009 must eliminate an employment position and terminate an associate. Store 82 could not cover its payroll plan for its part-time alterations specialists. In October 2009, under the reduction policy, Defendant discharged all of the part-time alterations specialists. On October 13, 2009, Plaintiff's position was eliminated, and she was discharged.

With respect to scheduling hours, the alterations manager scheduled the

part-time employees in the alterations department, with approval from the store manager.  During the relevant time period, Vicki Lauer was the store manager.  From 2006-2009, Plaintiff restricted her availability so as not to work evenings past 4:30 or 5:00 p.m.  In 2006, 2007, and 2008, Plaintiff often began her shift around 9:00 a.m., which was before the store opened for business each morning.  In 2008, Plaintiff worked more hours than she did in 2006 and 2007 because the alterations manager, Zahra Gholamifard, resigned in July 2008, and Plaintiff picked up additional responsibilities and hours in her absence.  Also, in 2008, Plaintiff did not take days off for a vacation.

In 2009, Plaintiff was typically scheduled to work 10-30 hours each week.  In early 2009, however, due to the need to reduce payroll in challenging economic circumstances, David's Bridal instructed its management teams in its stores that alterations personnel and receivers should not generally start work until the store opened for business at 11:00 a.m.  Thus, instead of commencing her work day at 9:00 a.m., Plaintiff was not able to start until 11:00 a.m.  Plaintiff began to complain about the number of hours that she was scheduled to work.  Vicki Lauer, the store manager, testified that she told Plaintiff that if she would open her availability to work nights and more weekends, then Plaintiff could be scheduled for more hours.

On May 14, 2009, Plaintiff spoke to someone in human resources.[1]  Stacey

---

[1] Plaintiff states that she cannot recall who she spoke to, but evidence submitted by the Defendant indicates that Plaintiff spoke to Stacey Gallagher, an employment specialist in the human resources department at David's Bridal.

Gallagher stated that Plaintiff complained to her that Vicki Lauer did not like her and reduced her hours because Plaintiff raised operational concerns to Lauer. Stacey Gallagher further stated that Plaintiff made no mention of discrimination as the reason for her reduction in hours. Gallagher communicated Plaintiff's concerns to the manager of employee relations responsible for Store 82, Madeline Rogers.

On May 14, 2009, Madeline Rogers spoke to Plaintiff. Rogers stated that Plaintiff raised the same complaints with her as she did with Gallagher. Plaintiff claimed that she was being retaliated against for calling attention to operational issues in the store. Again, Rogers stated that Plaintiff made no mention of discrimination. Plaintiff admits that she never told Rogers that she was being discriminated against on the basis of her race and national origin, however, Plaintiff contends that she stated that, in general, she was being discriminated against. Rogers reviewed the schedules for the alterations department and determined that Plaintiff's hours were restricted due to her availability and limited skills.[2] However, Rogers determined that there may be some opportunity to increase Plaintiff's work hours.

Rogers spoke to district manager, Loretta Szeredy-Meier, and they decided to have all of the alterations specialists complete "Availability Information" forms for the department's use in making schedules. Plaintiff broadened her availability on her "Availability Information" form to 4:30 p.m. on weekdays and some weekends. None of the other alterations specialists restricted their availability in the manner Plaintiff did. Still, Defendant immediately scheduled Plaintiff for additional hours in May 2009.

---

[2] Plaintiff disputes that she has "limited skills."

On May 30, 2009, Szeredy-Meier circulated guidelines for alterations departments in all of district 26, the district in which store 82 is located. Lauer circulated these guidelines to all employees in the alterations department, and on May 30, 2009, Plaintiff signed the form. The guidelines provided that since the bulk of Defendant's business occurs on the weekends, all associates were asked to work on weekends.

On June 9, 2009, Plaintiff filled out a vacation/personal day form, requesting nine days off of work in July 2009. Plaintiff took time off of work from July 13 through July 20, 2009. On July 4, 2009, Plaintiff voluntarily filled out a new "Availability Information" form, further restricting her availability from her last "Availability Information" form, noting that she was unavailable to work any nights or any Sunday, and would not work any holidays. Plaintiff restricted herself from working Sundays because Galushko was scheduling her to work every Sunday, and Plaintiff needed more family time.

### Plaintiff's Allegations Regarding Harassment

Plaintiff alleges Ina Galushko made two comments toward her based on her race or national origin. Plaintiff claims Galushko asked her to dress up in a Sari and dance in an Indian manner. Plaintiff also contends that Galushko said to a coworker she did not want to see her neighbor next door, because she's an Indian woman, and did not want to see an Indian face first thing when she came to work. Plaintiff admits she does not know whether Galushko was talking about her. Defendant disputes that this statement was ever made. Defendant further asserts that while Plaintiff claims that four other people witnessed this statement, she produced no evidence in support of this claim.

-5-

Plaintiff also claims that she overheard Galushko and Lauer talking about trying to terminate Plaintiff's employment. Defendant disputes that this statement was made, arguing that Plaintiff's claim is inconsistent with both her deposition testimony and an email Plaintiff wrote on June 29, 2009. In the June 29, 2009 email, Plaintiff wrote that Vicky Lauer was talking to somebody, but she did not know who she was talking to, about a plan to get her fired. Plaintiff first said in her deposition testimony that Lauer was talking to Galushko, but later admitted she did not know to whom Lauer was allegedly talking. Plaintiff stated that a wall separated the room she was in with the room she allegedly overheard Lauer and Galushko talking, and admitted she did not see Lauer and Galushko together.

On September 26, 2009, Plaintiff filed a charge of discrimination with the Colorado Civil Rights Division and EEOC. Among other things, Plaintiff complained her hours were reduced in April 2009, constituting a demotion. She identified no comments based on race or national origin. In February 2010, Plaintiff filed an amended charge of discrimination alleging that she was laid off in retaliation for engaging in a protected activity.

III. ANALYSIS

    A. Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  "When applying this standard, the court must 'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted).  All doubts must be resolved in favor of the existence of triable issues of fact.  *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

  B. <u>Whether Summary Judgment is Proper on Plaintiff's Claim of Discrimination on the Basis of Race or National Origin</u>

The Defendant asserts that summary judgment should be granted on Plaintiff's claim that she was discriminated against because her hours were reduced from an average of 23 hours per week in 2008 to 11 hours per week in 2009.

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against employees and applicants for employment on the basis of race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a)(1).  To state a valid claim under Title VII, plaintiff must prove by a preponderance of the evidence that the employer engaged in intentional discrimination.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).  "A plaintiff alleging discrimination on the basis of race or national origin may prove intentional discrimination through either direct evidence of discrimination (e.g. oral or written statements on the part of a defendant showing a discriminatory motivation) or indirect (i.e. circumstantial) evidence of discrimination."  *Kendrick v. Penske*

*Transportation Services, Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000).  When a plaintiff does not have direct evidence of discrimination, a plaintiff may rely on indirect evidence by invoking the analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Perry v. Woodward*, 199 F3d 1126, 1135 (10th Cir.1999).

In *McDonnell Douglas*, the Supreme Court "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases."  *Hicks*, 509 U.S. at 504.  When the *McDonnell Douglas* analysis is utilized, the burden of production shifts from plaintiff to defendant and back to plaintiff.  *McDonnell Douglas*, 411 U.S. at 802.  If a plaintiff establishes a prima facie case, then the burden of production shifts to the defendant to present evidence that it had a legitimate nondiscriminatory reason for its action.  *Id.* at 802-03.  If the defendant meets its burden of production, the plaintiff must then demonstrate that the defendant's proffered explanation is pretextual.  *Id.* at 804.  Evidence of pretext, plus the establishment of a prima facie case, is sufficient to avoid summary judgment, and plaintiff is not required to present direct evidence of an illegal discriminatory motive.  *Reynolds v. School Dist. No. 1*, 69 F.3d 1523 (10th Cir. 1995).

        1.      <u>Prima Facie Case of Race and National Origin Discrimination</u>

Here, Plaintiff does not contend that she has offered direct evidence of intentional discrimination, and in her response to the motion for summary judgment, she employs the *McDonnell Douglas* burden shifting analysis.  Thus, Plaintiff bears the initial burden of establishing a prima facie case of discrimination.

To meet her burden of establishing a prima facie case of discrimination on the

basis of race or national origin, Plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was qualified for the job: (3) she suffered an adverse employment action when Defendant reduced her hours; and (4) her hours were allocated to other workers.  *See Trujillo v. Univ. of Colo. Health Sciences Center*, 157 F.3d 1211, 1215 (D. Colo. 1998).

Initially, since it appears that Defendant does not argue that the Plaintiff failed to establish a prima facie case of racial discrimination under the *McDonnell Douglas* framework, I will focus my analysis on the second element of a legitimate nondiscriminatory reason for a reduction in Plaintiff's hours and the third element of pretext.

2. <u>Legitimate Nondiscriminatory Reason</u>

Plaintiff claims that the Defendant discriminated against her when the alterations manager, Galushko, reduced her employment hours in 2009.  Specifically, Plaintiff argues that she was scheduled for less hours in 2009 than she was in 2008, and that new employees were scheduled for more hours.[3]

While conceding that Plaintiff worked fewer hours in 2009 and less than both Litvak and Badalyan, Defendant states that this was unrelated to Plaintiff's race or national origin.  First, as a part-time employee, Plaintiff was not guaranteed a minimum number of hours.  Second, Defendant offered evidence that in 2009, in accordance with company policy, alterations specialists could no longer begin their work day at 9:00 a.m.

---

[3] By new employees, Plaintiff refers to two part-time alterations specialists, Marina Litvak and Anzehela Badalyan.

and had to wait until the store opened at 11:00 a.m. In years past, Plaintiff typically began her workday around 9:00 a.m., but could no longer do so in 2009. Third, Plaintiff took 15 vacation days off in 2009, but she took no vacation days off in 2008. Fourth, Plaintiff did not make herself available to work evenings, unlike the other part-time alterations specialists. Fifth, Plaintiff voluntarily limited her availability to work so that she would not be scheduled to work any evenings, Sundays, or holidays. Sixth, in 2008, Plaintiff worked extra hours covering shifts for an alternations manager who left her employment. Accordingly, I find that Defendant has offered legitimate nondiscriminatory reasons for the reduction in Plaintiff's hours in 2009. Thus, the burden shifts back to the Plaintiff to establish that the reasons are pretextual.

### 3. Pretext

The Tenth Circuit has held that if a plaintiff "presents evidence that the defendant's proffered reason for the employment decision was pretextual - i.e. unworthy of belief, the plaintiff can withstand a summary judgment motion and is entitled to go to trial." *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995). Pretext is normally shown in one of three ways: "(1) with evidence that the defendant's stated reason for the adverse employment action was false . . .; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances . . . ; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting plaintiff." *Kendrick v. Penske Transportation Systems, Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000). Direct evidence of discrimination

is also adequate to create a genuine dispute regarding pretext. *Id.*

The Plaintiff makes several arguments in support of her claim that Defendant's justification for reducing her hours in 2009 is pretextual. First, Plaintiff compares her hours to those of Manuela, Inna, and Rosa. However, I agree with Defendant that this is immaterial because Manuela, Inna, and Rosa are full-time employees. Full-time employees are required to work a minimum of 35 hours per week to retain full-time status. Defendant submitted evidence that hours for full-time employees are distributed first, with the remaining hours assigned to part-time employees. Hours for part-time employees vary from week to week depending on the needs of the business and work load.

Second, Plaintiff claims that her work availability was unchanged from 2008 to 2009. However, the evidence does not support this assertion. On May 19, 2009, Plaintiff completed her Availability Information form, limiting her work availability. Then, on July 4, 2009, Plaintiff voluntarily filled out a second Availability Information form, which limited her work availability to an even greater extent. Additionally, in contrast to 2008 when Plaintiff did not take any vacation time off, in 2009, Plaintiff took 15 days off for vacation. Moreover, due to the Defendant's nationwide policy prohibiting employees from commencing their work day at 9:00 a.m., Plaintiff could not start work until 11:00 a.m. Thus, even if Plaintiff's availability was unchanged from 2008 to 2009, her available work hours decreased due to the fact that she began her work day two hours later, at 11:00 a.m.

Finally, Plaintiff states that she has "direct evidence of why Ms. Galushko

assigned her fewer hours," which is the comment that Galushko stated that "she did not want to see an Indian face first thing in the morning" and that Galushko "mocked [Plaintiff] by asking her, in front of others, to dress in a Sari and dance like an Indian movie star." (Resp. at 7, ECF No. 16).[4]

### Direct Evidence of Discrimination

Plaintiff may demonstrate Defendant's discriminatory motive, and therefore, defeat summary judgment, by presenting direct evidence of Defendant's discriminatory intent. *Ramsey v. City & County of* Denver, 907 F.2d 1004, 1008 (10th Cir. 1990). A plaintiff can do this by presenting "oral or written statements on the part of defendant showing a discriminatory motivation" directly related to the adverse employment action. *Kendrick*, 220 F.3d at 1225. However, I must distinguish between statements establishing discriminatory animus in the decisionmaking process, which directly prove discrimination, and "stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process," none of which directly prove discrimination. *Mitchell v. City of Wichita,* Kansas, 140 Fed.Appx. 767, 778 (10th Cir. 2005). "[S]tatements expressing a personal opinion, even when reflecting a personal bias or prejudice, do not constitute direct evidence of discrimination." *Id.* (internal quotations omitted).

---

[4] While Plaintiff states that these comments are direct evidence of discrimination, Plaintiff conceded in her response that I should analyze this case under the *McDonnell Douglas* burden-shifting framework. So despite labeling this evidence as direct evidence, Plaintiff seems to treat the comments as indirect evidence. However, in an abundance of caution, because Plaintiff claims that she has some direct evidence, I first analyze whether Plaintiff can prove discrimination under the direct method of proof – if Plaintiff's evidence is direct evidence, minimal or otherwise, Plaintiff defeats summary judgment and the *McDonnell Douglas* burden-shifting analysis is unnecessary.

I find that the statements proffered by Plaintiff do not constitute direct evidence of race or national origin discrimination. Plaintiff has failed to offer any evidence that the two comments made by Galushko were related to any decisionmaking process. Moreover, Plaintiff conceded that she did not know if Galushko was talking about Plaintiff when she stated that she "did not want to see an Indian face first thing in the morning." Instead, it appears that Galushko's comments are the kind of "stray remarks" the Tenth Circuit has found insufficient to establish direct evidence. *Id.* Accordingly, I find that Plaintiff has failed to directly prove that race or national origin discrimination actually motivated Defendant to reduce Plaintiff's work hours.

Indirect Evidence of Discrimination

I now return to the *McDonnell Douglas* burden-shifting analysis and whether Galushko's statements were pretext for Defendant's legitimate nondiscriminatory reason for the reduction of Plaintiff's work hours in 2009. There is no evidence that Galushko refused to schedule Plaintiff until later in the morning to avoid seeing her, and Plaintiff's work schedule indicated that she was consistently scheduled to begin work around 11:00 a.m. when the store opened. Furthermore, it is unclear as to whether Galushko's comments were directed at Plaintiff. Plaintiff, herself, testified that she did not know if Galushko was taking about her. Also, the comments do not bear the necessary nexus to the reduction in Plaintiff's work hours. Thus, I find that the comments identified by Plaintiff do not show pretext for Defendant's legitimate nondiscriminatory reasons for the adverse employment action.

Accordingly, Plaintiff has failed to produce evidence on which a reasonable jury

could find that Defendant discriminated against her on the basis of race or national origin. Defendant's motion for summary judgment is granted as to this claim.

### C. Whether Summary Judgment is Proper on Plaintiff's Claim of Retaliation for Failure to Rehire

Plaintiff claims that Defendant retaliated against her by not hiring her in 2010 after she was discharged in October 2009. Specifically, Plaintiff claims that Galushko "did not ask her to return to work in March, 2010, either because of her national origin or because [Plaintiff] had filed a complaint with the Colorado Civil Rights Division." (Resp. at 6, ECF No. 16). In response, Defendant seeks summary judgment on this claim, arguing the following: (1) Plaintiff failed to exhaust her administrative remedies; (2) Plaintiff failed to allege this claim in her Complaint; and (3) Plaintiff cannot establish a prima facie case of retaliation.

I first address Defendant's argument that Plaintiff's retaliation claim is barred because she has failed to exhaust her administrative remedies. A plaintiff must exhaust his or her administrative remedies, such as filing a charge with the EEOC, before bringing suit under Title VII. *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1409 (10th Cir. 1997). Thus, a plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter. *Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1326 (10th Cir. 1999). Requiring exhaustion of administrative remedies "serves to put an employer on notice of a violation prior to the commencement of judicial proceedings [which] in turn serves to facilitate internal

-14-

resolution of the issue rather than promoting costly and time-consuming litigation." *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003). The failure to file an administrative Title VII claim before bringing suit is jurisdictionally fatal and requires dismissal. *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005); *Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 799 (10th Cir.1997).

Under Title VII, "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify [and e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). As a result, each incident of discriminatory treatment constitutes its own separate "unlawful employment practice" for which administrative remedies must be exhausted. *Martinez*, 347 F.3d at 1210 -1211.

Here, Plaintiff filed both a "Charge of Discrimination" and an "Amended Charge of Discrimination" with the Colorado Civil Rights Division and EEOC. Thus, I review both documents to assess whether Plaintiff sufficiently exhausted her administrative remedies as to Plaintiff's claim that Defendant retaliated against her by not hiring her in the spring of 2010 after she was discharged in October 2009. My reviews of the formal EEOC charge and the amended charge do not reveal any allegations that Plaintiff was retaliated against when Defendant chose not to hire her in 2010. In fact, the original charge fails to include any information about hiring, and the amended charge merely states "[o]n of about October 13, 2009, I was laid off. … Employees who were hired after me were retained after I was laid off." (Am. Charge of Discrimination). As a result,

I agree with Defendant that Plaintiff has failed to exhaust her administrative remedies as to her specific claim that Defendant retaliated against her by not hiring her in 2010.  *See Martinez,* 347 F.3d at 1210 -1211 (requiring that each incident of discriminatory treatment constitutes its own "unlawful employment practice" for which administrative remedies must be exhausted).

However, even if Plaintiff did adequately exhaust her remedies, I also find that Defendant is entitled to summary judgment on Plaintiff's retaliation claim because the acts of harassment alleged by Plaintiff do not satisfy her burden of establishing a prima facie case under the *McDonnell Douglas* framework.

Where there is no direct evidence of retaliation, as is the case here, I again analyze the claim under the *McDonnell Douglas* burden shifting framework.  *See Stover v. Martinez*, 382 F.3d 1064, 1070 -1071 (10th Cir. 2004) (citing *Jeffries v. State of Kansas*, 147 F.3d 1220, 1231 (10th Cir. 1998)).  To satisfy a plaintiff's prima facie burden on a claim of retaliation for having exercised rights pursuant to Title VII, he or she must show that: (1) the plaintiff engaged in protected opposition to discrimination; (2) the employer subsequently took action that a reasonable employee would have found materially adverse; and (3) there is a causal connection between the plaintiff's protected activity and the adverse action.  *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007); *Argo v. Blue Cross and Blue Shield of Kansas*, 452 F.3d 1193, 1202 (10th Cir. 2006).  To prove discrimination for failure to hire, a plaintiff must show that: (1) she belongs to a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) despite being qualified, the

plaintiff was rejected; and (4) after plaintiff's rejection, the position remained open and the employer continued to seek applicants. *Kendrick*, 220 F.3d 1220 at 1226.

Defendant contends that Plaintiff cannot make our her prima facie case in that she cannot demonstrate that she suffered a materially adverse employment action. I agree. The evidence reveals that Plaintiff did not apply for an open employment position. In her deposition, Plaintiff testified that she spoke to one of Defendant's receptionists about whether there were any job openings. Plaintiff did not speak to Galushko or Lauer (on the phone or in-person) or in any other way request or apply to be rehired. Moreover, Defendant submitted evidence that while it did hire some new employees in the alterations department in 2010, all of these new employees had applied for open positions. Accordingly, I find that a reasonable employee could not have found the fact that Plaintiff was not hired for a job that she did not apply for to be a materially adverse action. Defendant is entitled to summary judgment as to this claim.

IV.   CONCLUSION

Based on the foregoing, it is

ORDERED that Defendant's Motion for Summary Judgment (ECF No. 15) is **GRANTED.** Defendant is entitled to summary judgment in its favor as to all of Plaintiff's claims alleging race and national origin discrimination under Title VII. Accordingly, this matter is **DISMISSED** in its entirety. It is

FURTHER ORDERED that the trial set for Monday, October 15, 2012 and the final trial preparation conference set for Wednesday, October 3, 2012 are hereby **VACATED**. It is

FURTHER ORDERED that in accordance with D.C.COLO.LCivR 54.1, Defendant shall have its costs by the filing of a Bill of Costs with the Clerk of this Court within fourteen (14) days of entry of judgment.

Dated: August 8, 2012.

BY THE COURT:

s/ Wiley Y. Daniel
WILEY Y. DANIEL,
CHIEF UNITED STATES DISTRICT JUDGE